195 So. 248

**LANG v. CITY OF MOBILE et al.**

**I Div. 99.**

Supreme Court of Alabama.

April 4, 1940.

Kenneth E. Henderson, of Mobile, for appellant.

S. P. Gaillard, Jr., of Mobile, for appellees.

336

KNIGHT, Justice.

The bill in this cause was filed by complainant—appellant here—seeking declaratory judgment as to the right of the city to refund certain bonds which were issued by the City of Mobile for the purpose of financing, with the aid of a grant from the United States of America, the construction of a wharf, and certain port facilities, in the City of Mobile, Alabama, in accordance with Act No. 154 of the 1935 General Acts of the Legislature of the State of Alabama, known as the "Municipal Revenue Bond Act of 1935," Acts 1935, p. 195; and to have it judicially determined whether or not the City of Mobile could legally enter into a contract with the Department of Docks and Terminals, with the consent of the governor, for the lease of said port facilities and properties, now owned by said city, to the State of Alabama; and whether or not the Department of State Docks and Terminals could legally enter into such contract. A copy of the proposed lease contract is made an exhibit to the bill.

It is averred in the bill that the City of Mobile had issued Five Hundred Thousand Dollars of revenue bonds, in accordance with the provisions of the above mentioned Act, for the purpose of financing the construction of said municipal project, and that said project had been constructed with the proceeds of the sale of said bonds,

supplemented by a grant from the United States of America. That the complainant was the owner and holder of one of said bonds; that said bonds were designated in the ordinance or resolution authorizing their issuance as "Mobile Port Revenue Anticipation Bonds, 1938," and are all dated August 1, 1938, and all are of the denomination of One Thousand Dollars principal amount.

The said bonds are secured by the revenue to be derived from the operation of the facilities and equipment constructed with the proceeds of the sale of said bonds. The bonds of said issue now outstanding aggregate the principal amount of $421,000.

It appears that the defendants are taking steps to refund said bonds by the issuance of refunding bonds, and the complainant, the owner of one of said bonds in the principal sum of $1,000, charges that the City of Mobile, and the co-defendants, Cecil F. Bates, as Mayor and Commissioner, and the said Charles Baumhauer, as Commissioner, are without "legal power and authority" to refund said bonds in the manner, and by the means which they are attempting to pursue.

It appears from the bill that the bonds which the city purposes to refund, while not yet matured, are callable at any time at a *fixed call price*.

In the third paragraph of the bill it is averred that the State of Alabama proposes to acquire the facilities under the provisions of a lease and operating agreement, substantially in the form of the copy which is attached to the bill; that the legality of said agreement directly affects said bonds of the proposed refunding issue, in that it affects the revenue with which they are to be liquidated; that the defendants "are without authority and power, and cannot legally enter into the said agreement for that the State of Alabama, acting through its appropriate agency, is without authority to obligate the State of Alabama to pay out of the operating gross revenue of state-owned terminals the stipulated rentals provided in said agreement, and cannot pay such rentals as an operating expense, payable out of the first operating gross revenue derived from the operation of all state-owned terminals."

It is alleged that the state has reached the constitutional debt limit fixed by the Port Amendment to Section 93 of the Constitution, Amend. No. 12, and the acquisition of the use of the facilities under

the proposed lease agreement is a capital cost which the state, through its appropriate agency, cannot legally incur under the constitution and laws of the state.

It is also averred that the defendants are without the authority to "undertake the obligations and covenants contained in the proposed resolution authorizing the refunding bonds which are obligations and covenants requiring the city to maintain, operate and insure the facilities, nor does the City of Mobile have the authority or power to execute the proposed lease of the facilities to the State of Alabama in that the use of such facilities cannot be transferred from the city by lease to the State of Alabama or (to) any other person or agency."

It is further averred that the defendants would not be able to exercise the "call" privileges contained in the bonds unless and until they—the defendants—have completed the refunding of said bonds and have provided funds thereby for the purpose of redeeming the bonds through the sale of the refunding bonds; and the complainant avers that the defendants are without power to issue refunding bonds in the manner and form proposed, and cannot redeem or call the bonds of complainant except through the exercise of illegal acts as alleged in the bill.

It is further averred that the proposed refunding bonds will bear a less rate of interest than the bonds now owned by complainant, and that complainant must either accept payment of his bonds at the fixed call price, or accept, in lieu of his present bonds, bonds of the refunding issue. This, he avers, will violate his contractual rights as a holder of one or more of the present bonds.

The lease which the City of Mobile purposes to execute to the State of Alabama, acting through the Department of State Docks and Terminals, by and with the consent of the governor, appears, preamble omitted, in the report of the case.

From this contract of lease it appears that the City of Mobile "rents, leases, and lets unto the Department of State Docks and Terminals 'certain marine terminals facilities' particularly described in the contract for a term of thirty years, at certain yearly rentals." The contract provides that the rentals shall be *payable from the first gross operating revenues of the project itself* (leased property), and if for any reason and at any time such first gross operating revenues are insufficient to make such payment, and to the extent of such insufficiency, they shall be payable from the gross operating revenues derived from the operation of the state-owned terminals at the port and City of Mobile. Such rentals, it is expressly stipulated, shall be payable from no other funds than those mentioned above.

By their answer, the defendants admitted that the city would not be able to exercise the right to call the bonds of which complainant's bond is one unless the refunding bonds could be issued, but they deny that they are without power to issue refunding bonds in the manner and in the form proposed in the bill of complaint. The defendants deny that they are without power or authority to execute the lease to the State, or that the state, acting through the Department of State Docks and Terminals, with the consent of the governor, is without legal right or authority to acquire the said facilities, and they deny that the state, acting through its said agency, cannot pay said rentals in the manner and from the revenues as contemplated in said proposed lease.

The defendants specifically deny that the proposed refunding of the bonds will violate any contractual right of complainant, but admit that a holder of a present bond will either be required to accept payment in full at the call price, or accept a refunding bond at a lower rate of interest.

On the submission of the cause testimony was offered and noted. The evidence shows without conflict that the facilities which the city purposes to lease to the Department of State Docks and Terminals of the State of Alabama constitute a unit needed by the Port of Mobile to round out and supplement other facilities now owned and operated by the State; that the equipment and facilities are of an improved design especially adapted for handling a special type of cargo moving through the port, and that the public interest of the Port, the state and the users of the facilities now installed can best be served by having the municipal facilities operated as a part or unit of the entire state-owned terminals, of which, in fact, they are a physical part. That the facilities which the city proposes to lease to the Department of State Docks and Terminals would in themselves produce revenues yearly sufficient to pay the proposed rental and in addition would produce a revenue for the

state as a part of its general operating revenue; that the use of the said facilities to be acquired under the proposed lease would effect economies and increase the efficient operation of the existing state-owned facilities; and that the annual rentals to be paid under the proposed lease will be sufficient to amortize the refunding bonds as they mature, both as to principal and interest; and that the rentals will be paid out of the revenues to be derived from this operation of leased facilities, or from the general gross operating revenue derived by the state from the state-owned marine terminals.

Upon final submission the court rendered a declaratory decree or judgment, holding that the city had the authority to refund the bonds in question, and had the authority to execute the proposed lease to the Department of State Docks and Terminals, and that the state, acting by and through said department could acquire the said municipal facilities by lease, the rentals to be paid as provided in the contract of lease. This decree appears in the report of the case.

We entertain no doubt that the bill presents a real and substantial controversy, of a justiciable character, and conferred upon the circuit court jurisdiction to grant relief under the Declaratory Judgment Act. In all cases an actual controversy of a justiciable nature must be made to appear in which the parties to the proceedings are interested, and, when this is made to appear, a case for a declaratory judgment is presented. Uniform Declaratory Judgment Act, § 7 (General Acts 1935, p. 778); Scott v. Alabama State Bridge Corp., 233 Ala. 12, 169 So. 273; Jefferson County v. Johnson, 232 Ala. 406, 168 So. 450; Bagwell v. Woodward Iron Co., 236 Ala. 668, 184 So. 692; Barlowe v. Employers Ins. Co., 237 Ala. 665, 188 So. 896.

In the case of Scott v. Alabama State Bridge Corp., supra, it was observed [233 Ala. 12, 169 So. 277]: "Controversies touching the legality of the acts of public officials, or public agencies, challenged by parties whose interests are adversely affected, is one of the favored fields for such declaratory judgment, styled in the act and in the authorities, the 'declaration.' Official action, done or threatened, challenged as unlawful, a usurpation of official power, whether lack of [official] authority appears in the terms of the statutes, or because of unconstitutionality thereof, are said to be determinable in this manner rather than force the parties to seek injunctive relief, which involves many questions going to the propriety of such relief."

Having determined that the case presents justiciable issues between parties whose rights are involved, the inquiry in the court below, as well as here, must be directed to the merits of the controversy.

Unquestionably, the City of Mobile under the provisions of the amendment, Act No. 195, approved July 17, 1935, General Acts of Alabama 1935, pp. 575, 578 (Sec. 3), to the Municipal Code Act (General Acts 1927, p. 539), has the authority to refund its bonded indebtedness, this amendatory act is broad and comprehensive and confers the authority upon the City of Mobile to issue refunding bonds to take up and pay off the bonds of the class and issue as the one owned by complainant.

This act of July 17, 1935, provided, inter alia: "The governing body of any municipality may, without any election, issue bonds of the municipality for the purpose of refunding a like or greater face amount of the principal of any matured or *unmatured* bonds of such municipality then outstanding, whether the bonds to be refunded belong to one class or to two or more classes or to one issue or two or more issues * * *." Language conferring authority and power to refund existing bonds and obligations could not well be made clearer.

We are likewise of the opinion, and so hold, that under said Amendatory Act of 1935, the holders of all refunding bonds issued under the provisions of said act, whether such bonds shall have been delivered in exchange for the indebtedness refunded or funded, or shall have been sold and the proceeds thereof applied to the retirement of such indebtedness, shall be subrogated to all the rights and powers of the holders of such indebtedness, unless the ordinance or resolution authorizing the issuance of the refunding or funding bonds expressly provides otherwise. This right of subrogation is expressly provided for in said act, and we see nothing in the act, nor in the general law, to deny to the owners of such refunding or funding bonds the right so given them in the refunding act. It was and is clearly within legislative power to confer this right. General Acts 1935, pp. 575, 578, 579.

The Constitution, § 93, as amended, Amend. No. 12, and Enabling Acts authorized the state, at a cost of not exceeding ten million dollars, to engage in the work of internal improvement, or promoting, developing, constructing, maintaining, and operating all harbors and seaports within the state or its jurisdiction, *provided,* that such work or improvement shall always be and remain under the management and control of the state, through its State Harbor Commission, *or other governing agency.*

The Legislature of Alabama, by an Act approved January 17, 1927, General Acts 1927, pp. 1 to 14, authorized the state acting through the State Docks Commission (now the Department of State Docks and Terminals), for the State of Alabama, to "acquire, purchase, install, *lease,* construct, own, hold, maintain, equip, use, control and operate at seaports, wharves, piers, docks * * * warehouses and other water and rail terminals and other structures, and facilities needful for the convenient use of same in the aid of commerce * * *." In Section 7 of said act the Legislature expressly provided that "the proceeds from all leases shall become a part of the operating fund."

█ It appears that the state has exhausted the ten million dollars which was authorized by the Constitution to be spent in the original undertaking, but it plainly appears that the Department of State Docks and Terminals does not intend, by the acquisition of said facilities, through the proposed lease from the city, to involve the state in any transaction with the city, which would result in the creation of a debt against the state, within the meaning of Section 213 of the Constitution. The contract definitely provides that the money to be paid the city by way of rentals, will, and must be paid from the first gross operating revenues of the leased facilities, but with the further provision that if for any reason and at any time such first gross operating revenues are insufficient to make such payments, and to the exent of such insufficiency, such rentals shall be payable from the gross operating revenues derived from the operation of the state-owned terminals at the Port and City of Mobile. The said lease contract expressly provides that such rentals shall be payable from no other funds than those above mentioned. Therefore, the rentals will not be in any event a charge on the general revenues of the state, nor will the faith and credit of

the state be involved. The debt incurred, or to be incurred, by the Department of State Docks and Terminals for said lease will not be a debt within the meaning of Section 213 of the Constitution. Scott v. Alabama State Bridge Corporation, supra.

█ The evidence shows that the wharf facilities owned by the city are in fact needed by the Department of State Docks and Terminals, and if acquired by it, they would directly contribute to the increased use of the state-owned terminals, and produce revenue for the state, and could be operated with but little extra expense. Be this, however, as it may, the Enabling Act confers broad powers upon the State Docks Commission, and also gives to this commission (now Department of State Docks and Terminals) a wide latitude of discretion, not to be controlled by the courts, except in cases of abuse of such discretion. Undoubtedly should the commission attempt to create a debt against the state, within the meaning of Section 213 of the Constitution, in excess of the original ten million dollars authorized by the amendment to section 93 of the Constitution, such an attempt would be in excess of the powers of the commission, and would, consequently, be void, and the court, on proper showing in a proper case, would arrest such an attempt. No such case is here shown; on the contrary, it is our considered opinion, and we so hold, the Department of Docks and Terminals, if it should enter into the said lease-contract with the City of Mobile, with the consent of the governor, it will be acting within the scope of its legal authority and powers.

The Enabling Act expressly authorizes the commission to retain from the money coming into its hands such amounts as may reasonably be required for operating capital, and all amounts that are so retained shall be deemed to be an operating expense within the meaning of the act. General Acts 1927, pp. 1 to 14.

We are not impressed that the rentals to be paid the city by the Department of State Docks and Terminals, under the lease-contract, for the use of the facilities and equipment of the city, can be considered as initial cost but rather as operating expenses, and payable as such. If this were not true, the commission would be powerless to install other equipment, or other or more modern facilities to meet the demands of ever increasing water-

340

power commerce notwithstanding the first facilities and equipment owned and installed by it should need replacement from long use, or from other causes.

 Nor do we doubt the power and authority of the City of Mobile to execute the proposed lease set out in the bill. Section 2018 of the Code, as amended by the Legislature in 1939 (General Acts, 1939, p. 38) expressly confers the powers here attempted to be exercised upon the city. State ex rel. Radcliff v. City of Mobile, 229 Ala. 93, 155 So. 872.

Neither the execution of said lease by the City of Mobile and the Department of State Docks and Terminals (with the consent of the governor) nor the refunding of the bonds in question will violate any rights, contractual or otherwise, of the complainant, the holder of one of said bonds.

It only remains to be said that we have carefully considered each and every phase of the decree of the circuit court rendered in this cause, and are of the opinion that the decree is free from error. It is due, therefore, to be affirmed. So ordered.

Affirmed.

GARDNER, BOULDIN, and FOSTER, JJ., concur.