[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 434 
Daniel D. Lyles sued the Alabama State Docks Terminal Railway ("Terminal Railway") under provisions of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq.; the Boiler Inspection Act,45 U.S.C. § 22 et seq.; and the Safety Appliance Act, 45 U.S.C. § 1
et seq., alleging that negligence on the part of the Terminal Railway had caused him to suffer personal injury while working within the line and scope of his employment with the Terminal Railway. The Terminal Railway denied the material allegations in Lyles's complaint and asserted numerous affirmative defenses, including the defense of sovereign immunity. The trial court granted Lyles's motion to strike the Terminal Railway's defense of sovereign immunity, and the parties proceeded to a jury trial. The jury returned a verdict in favor of Lyles for $700,000 and the trial court entered a judgment on that verdict. The Terminal Railway appeals. We reverse.
The Terminal Railway raises a number of issues, one being whether it is entitled to immunity from an action for money damages. Because we hold that the Terminal Railway is immune from an action for money damages, we pretermit discussion of the other issues.
 I. Immunity
We first acknowledge the undisputed fact that the Alabama State Port Authority, formerly known as the Alabama State Docks Department, is an agency of the State of Alabama. See § 33-1-2, Ala. Code 1975.[1]
See also State Docks Comm'n v. Barnes, 225 Ala. 403, 143 So. 581 (1932);Benniefield v. Valley Barge Lines, 472 F. Supp. 314, 316 (S.D.Ala. 1979). The Legislature has explicitly granted the Alabama State Port Authority the power to "acquire, own, lease, locate, install, construct, hold, maintain, control, and operate at seaports a line of terminal railroads." See § 33-1-16, Ala. Code 1975. The Terminal Railway is a subdivision of the Alabama State Port Authority. See Coleman v. AlabamaState Docks Terminal Ry., 596 So.2d 912 (Ala. 1992). The Terminal Railway cannot be sued for money damages, because it is a subdivision of the Alabama State Port Authority, which is an agency of the State. "There are cases in abundance sustaining the proposition that [the Alabama State Docks Department, now the Alabama State Port Authority] and its agencies are immune from suit under the doctrine of sovereign immunity. Jones v.Alabama State Docks, 443 So.2d 902 (Ala. 1983), State Docks Commissionv. Sossaman, 227 Ala. 700, 149 So. 923 (1933), and State Docks Commissionv. Barnes, 225 Ala. 403, 143 So. 581 (1932)." Fikes v. Alabama StateDocks, 627 So.2d 462, 463 (Ala.Civ.App. 1993).
The immunity that protects the Alabama State Port Authority and its agencies from an action for money damages is based upon two distinct, yet closely related, legal theories: state sovereign immunity and the immunity provided by the Eleventh Amendment to the United States Constitution.
 A. Article I, § 14, Immunity
The long-standing legal principle of state sovereign immunity is written into Alabama's Constitution. "Article I, § 14, *Page 435 
Alabama Constitution of 1901, provides that `the State of Alabama shall never be made a defendant in any court of law or equity.' Under this provision, the State and its agencies have absolute immunity from suit in any court." Ex parte Franklin County Dep't of Human Res.,674 So.2d 1277, 1279 (Ala. 1996) (citing Barnes v. Dale,530 So.2d 770 (Ala. 1988)). Neither the State nor the Alabama State Port Authority has the power to waive that immunity:
 "It is familiar law in this state that § 14 `wholly withdraws from the Legislature, or any other state authority, the power to give consent to a suit against the state.' Dunn Construction Co. v. State Board of Adjustment, 234 Ala. 372, 376, 175 So. 383, 386 (1937). This Court has recognized the `"almost invincible" "wall" of the state's immunity, as established "by the people through their Constitution."' Jones v. Alabama State Docks, 443 So.2d [902] at 905 [(Ala. 1983)], quoting Hutchinson v. Board of Trustees of University of Alabama, 288 Ala. 20, 24, 256 So.2d 281, 284 (1971). Therefore, it is clear that neither the [L]egislature nor the State Docks had the power to waive, either expressly or impliedly, the state's immunity under § 14 and thereby consent to a damages action against the state."
Alabama State Docks v. Saxon, 631 So.2d 943, 946 (Ala. 1994). (See Exparte Cranman, 792 So.2d 392 (Ala. 2000), for history and background regarding the development of state-agent immunity.) ArticleI, § 14, of the Alabama Constitution of 1901 thus removes subject-matter jurisdiction from the courts when an action is determined to be one against the State.
 "We have held that the circuit court is without jurisdiction to entertain a suit against the State because of Sec. 14 of the Constitution. J.R. Raible Co. v. State Tax Commission, 239 Ala. 41, 194 So. 560
[(1939)]. And this court has said that it will take notice of the question of jurisdiction at any time or even ex mero motu. Horn v. Dunn Brothers, Inc., 262 Ala. 404, 79 So.2d 11 [(1955)]; Scott v. Alabama State Bridge Corporation, 233 Ala. 12, 169 So. 273
[(1936)]. Therefore, it appears that a trial court or an appellate court should, at any stage of the proceedings, dismiss a suit when it becomes convinced that it is a suit against the State and contrary to Sec. 14 of the Constitution."
Aland v. Graham, 287 Ala. 226, 229, 250 So.2d 677, 678 (1971). This constitutionally guaranteed principle of sovereign immunity, acting as a jurisdictional bar, precludes a court from exercising subject-matter jurisdiction. Without jurisdiction, a court has no power to act and must dismiss the action. "`The question of jurisdiction is always fundamental, and if there is an absence of jurisdiction over either the person, or the subject matter, a court has no power to act, and jurisdiction over the subject matter cannot be created by waiver or consent.'" Mobile Gulf R.R. v. Crocker, 455 So.2d 829, 831 (Ala. 1984) (quoting Norton v. Liddell, 280 Ala. 353, 356, 194 So.2d 514, 517
(1967)). If an Alabama court has jurisdiction to hear Lyles's action, it must come through some abrogation of the State's immunity.
 B. Eleventh Amendment Immunity
The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently *Page 436 
held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."Edelman v. Jordan, 415 U.S. 651, 662-63 (1974); Hans v.Louisiana, 134 U.S. 1 (1890).
While the Eleventh Amendment governs the jurisdiction of federal courts over the states and immunizes the states from certain actions in the federal courts, the Eleventh Amendment is not the source of a state's immunity from actions in its own courts. Alden v. Maine, 527 U.S. 706
(1999). A state's immunity from actions in its own courts derives from other bases, including common-law sovereign immunity and state constitutional sovereign immunity, such as the immunity guaranteed the State of Alabama by Art. I, § 14, Alabama Constitution of 1901. SeeAlden. While Parden v. Terminal Railway of the Alabama State DocksDepartment, 377 U.S. 184 (1964), did create the doctrine of constructive waiver of state sovereign immunity, Parden did not change the source or basis of state sovereign immunity.
A defense of Eleventh Amendment immunity need not necessarily be invoked in the trial court in order to be preserved for consideration on appeal. See Edelman v. Jordan, 415 U.S. at 677-78. But see Wisconsin Dep'tof Corr. v. Schacht, 524 U.S. 381 (1998) (holding that a court has no obligation to raise the issue of Eleventh Amendment immunity sua sponte). See also United States ex rel. Long v. SCS Business TechnicalInstitute, 173 F.3d 890 (D.C. Cir. 1999), for Judge Silberman's thoughtful and scholarly analysis of the peculiar nature of theEleventh Amendment's application as a jurisdictional bar to actions against a state.
The Eleventh Amendment was ratified in 1798, in reaction to Chisholmv. Georgia, 2 U.S. (2 Dall.) 419 (1793). It was adopted to protect states from monetary judgments and to reaffirm their independent and distinct sovereignty within the federal system. See Alden v. Maine, supra,527 U.S. at 712-28, for a thorough statement of the history of the political and legal backdrop that led to the adoption of the Eleventh Amendment.
There are only two conditions under which a state may be made a defendant in a federal court: 1) if the state has consented to be sued, by waiving its immunity or 2) if Congress has expressed a clear and unmistakable intent to make the state subject to suit, pursuant to Congress's right to enforce the 13th, 14th, and 15th Amendments to the United States Constitution. See, e.g., Seminole Tribe of Florida v.Florida, 517 U.S. 44 (1996). See also Roger C. Hartley, The Alden Trilogy: Praise and Protest, 23 Harv. J.L. Pub. Pol'y 323 (2000).
The plaintiff, Daniel D. Lyles, is a citizen of Alabama; he based his action against the Terminal Railway upon the authority of Parden v.Terminal Railway of the Alabama State Docks Department, supra. InParden, a closely divided Supreme Court held that because the Terminal Railway operated in a sphere traditionally reserved for private industry, the Terminal Railway, even though admittedly an agency of the State of Alabama, was not entitled to the defense of Eleventh Amendment immunity against a claim brought under the FELA in a federal court. The Court held that the State had constructively waived its right to a defense of Eleventh Amendment immunity because its operation of the railway had *Page 437 
affected interstate commerce. 377 U.S. at 192. The logic behind the Court's opinion was as follows:
 "By adopting and ratifying the Commerce Clause, the States empowered Congress to create such a right of action against interstate railroads; by enacting the FELA in the exercise of this power, Congress conditioned the right to operate a railroad in interstate commerce upon amenability to suit in federal court as provided by the Act; by thereafter operating a railroad in interstate commerce, Alabama must be taken to have accepted that condition and thus to have consented to suit."
Id. at 192. Thus was born the doctrine of constructive waiver and the legal basis for Lyles's action against the Terminal Railway.
By its opinion in Parden, the United States Supreme Court created a narrow basis for abrogation of the State of Alabama's Eleventh Amendment immunity. However, this doctrine of constructive waiver has never again found a comfortable home at the Supreme Court. "[T]he Court has limited and distinguished Parden so often that some commentators now label the doctrine of constructive waiver a `dead letter.'" Note, Reconceptualizingthe Role of Constructive Waiver After Seminole, 112 Harv. L. Rev. 1759, 1768 (1999) (quoting John T. Cross, Intellectual Property and theEleventh Amendment After Seminole Tribe, 47 DePaul L. Rev. 519, 537 (1998)). See, e.g., Welch v. Texas Dep't of Highways Pub. Trans.,483 U.S. 468, 478 (1987) (holding that a state may not be sued in a federal court absent a clear congressional intent and stating: "Although our later decisions do not expressly overrule Parden, they leave no doubt that Parden's discussion of congressional intent to negateEleventh Amendment immunity is no longer good law."); Edelman v. Jordan,415 U.S. 651 (1974) (holding that a state's acceptance of federal funding does not provide consent to suit in federal courts); Employees v.Department of Pub. Health Welfare, 411 U.S. 279 (1973) (requiring explicit congressional intent to show that particular conduct is a constructive waiver). Legal scholars analyzing Eleventh Amendment jurisprudence recognized that the Supreme Court was poised to prohibit nonconsensual actions against states, in both state courts and federal courts. See Carlos Manuel Vazquez, What is Eleventh Amendment Immunity?, 106 Yale L.J. 1683 (1997).
Indeed, the prognosticators were correct and the theory of constructive waiver was to have a short life:
 "We think that the constructive-waiver experiment of Parden was ill conceived, and see no merit in attempting to salvage any remnant of it. As we explain below in detail, Parden broke sharply with prior cases, and is fundamentally incompatible with later ones. We have never applied the holding of Parden to another statute, and in fact have narrowed the case in every subsequent opinion in which it has been under consideration. In short, Parden stands as an anomaly in the jurisprudence of sovereign immunity, and indeed in the jurisprudence of constitutional law. Today, we drop the other shoe: Whatever may remain of our decision in Parden is expressly overruled."
College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,527 U.S. 666, 680 (1999). The Court explained: "Our more recent decision in Seminole Tribe expressly repudiates that proposition [constructive waiver], and in formally overruling *Page 438 Parden we do no more than make explicit what that case implied."College Sav. Bank, 527 U.S. at 683.
With the final, explicit overruling of Parden, there can be no question that if Lyles were filing his currently pending FELA action today, the trial court would be required by both Alabama law and federal law to dismiss it for lack of subject-matter jurisdiction. The window has unquestionably been closed for new claims. However, we are confronted with this more difficult question: What is the status of Lyles's action, which he commenced before the Supreme Court decided College Savings Bank? This question implicates two separate concepts: retroactivity of judicial decisions and due process.
 II. Retroactivity
The issue of retroactivity in this case involves two separate elements. The first element is the effect of an outcome-determinative change in the positive law. The second element is this Court's general reluctance to use caselaw to establish prospective rules of law. We must begin our analysis by noting that the Eleventh Amendment is a source of positive law. It is not some judicially created dogma, but rather an integral part of the basic constitutional framework of our nation and a fundamental bulwark protecting the states' sovereign dignity.
The general rule is that a case pending on appeal will be subject to any change in the substantive law. The United States Supreme Court has stated, in regard to federal courts that are applying state law: "[T]he dominant principle is that nisi prius and appellate tribunals alike should conform their orders to the state law as of the time of the entry. Intervening and conflicting decisions will thus cause the reversal of judgments which were correct when entered." Vandenbark v.Owens-Illinois Glass Co., 311 U.S. 538, 543 (1941). See also UnitedStates v. Schooner Peggy, 5 U.S. 103 (1801). Thus, courts are required to apply in a particular case the law as it exists at the time it enters its final judgment:
 "[I]t has long been held that if there is a change in either the statutory or decisional law before final judgment is entered, the appellate court must `dispose of [the] case according to the law as it exists at the time of final judgment, and not as it existed at the time of the appeal.' This rule is usually regarded as being founded upon the conceptual inability of a court to enforce that which is no longer the law, even though it may have been the law at the time of trial, or at the time of the prior appellate proceedings."
Note, Prospective Overruling and Retroactive Application in the FederalCourts, 71 Yale L.J. 907, 912 (1962) (quoting Montague v. Maryland,54 Md. 481, 483 (1880)).
This Court applied this changing-law principle in Stone v. GulfAmerican Fire Casualty Co., 554 So.2d 346, 368 (Ala. 1989). In Stone, various parties sued for a judgment declaring that Catherine Yvonne Stone, the illegitimate daughter of singer/songwriter "Hank" Williams, was barred from asserting any claim to his estate. The law in Alabama, as it existed at the time of Hank Williams's death in 1953, did not allow Stone to claim legitimatization by a judicial determination of paternity. Id. at 368. However, the United States Supreme Court ruled a similar prohibition unconstitutional, see Trimble v. Gordon, 430 U.S. 762
(1977), and this Court soon thereafter held that Alabama's law was also unconstitutional, see Everage v. Gibson, 372 So.2d 829 (Ala. 1979). This Court *Page 439 
held in Stone that "In an action, such as the present one, that is not time-barred and is properly before this Court, we are bound to apply a constitutional law as it exists at the time the appeal is heard." 554 So.2d at 368.
In general, with regard to civil matters, prospective-only decision-making within the realm of constitutional law is disfavored. "Since the Constitution does not change from year to year; since it does not conform to our decisions, but our decisions are supposed to conform to it; the notion that our interpretation of the Constitution in a particular decision could take prospective form does not make sense."American Trucking Ass'ns, Inc. v. Smith, 496 U.S. 167, 201 (1990) (Scalia, J., concurring).
Even when this Court is not applying a rule of constitutional or statutory law, but is only addressing the effects of decisional law, our strong inclination is to avoid establishing rules that are to be applied prospectively only:
 "Although circumstances occasionally dictate that judicial decisions be applied prospectively only, retroactive application of judgments is overwhelmingly the normal practice. McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156 (Ala. 1996) (plurality opinion). `Retroactivity "is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law. . . . It also reflects the declaratory theory of law, . . . according to which the courts are understood only to find the law, not to make it."' 687 So.2d 156, quoting James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 535-36, 111 S.Ct. 2439, 2443-44, 115 L.Ed.2d 481 (1991)."
Professional Ins. Corp. v. Sutherland, 700 So.2d 347, 352 (Ala. 1997). We are therefore required to read the Eleventh Amendment as the United States Supreme Court currently interprets it; that is to say, an Alabama state court has no jurisdiction over an action brought under the FELA and its related provisions against the State of Alabama for money damages. That is the current status of constitutional law, and that is the law we must apply to this case.
 III. Due Process
Lyles argues that a refusal to allow Alabama courts to decide his claim would amount to a denial of due process of law, because, he says, his claim has matured and represents a vested right. We find this argument unavailing. Lyles contends that § 13 of the Alabama Constitution of 1901 guarantees due process of law and that, with respect to § 14, this Court should adopt a balancing test and by balancing the interests of § 13 and the prohibitions of § 14, allow his claim to be heard. This Court considered such an argument in Jones v. Alabama StateDocks, supra, and concluded that the integrity of the State's immunity cannot tolerate such a result. See also Ex parte Cranman, supra. The doctrine of separation of powers prevents this Court from fashioning, from whole cloth, some unique legal remedy suited to Lyles's alleged wrong; fashioning such a remedy would be within the province of the Legislature, subject nonetheless to the constraints of Art. I, § 14. See, e.g., Ala. Code 1975, § 41-9-60; State ex rel. McQueen v.Brandon, 244 Ala. 62, 12 So.2d 319 (1943).
Lyles claims that he filed his action in reliance upon Parden. However, the limited viability of Parden's constructive-waiver theory, especially after the concept was implicitly overruled in Seminole Tribe, was foreseeable. Certain factors suggest that when Lyles sued he was acting with a *Page 440 
"functional notice" that he could not rely on Parden:
 "[I]t will not do for a litigant to claim surprise in cases in which the overruled decision has long been eroded by cases which have all but explicitly overruled it. Decades of cases limiting the original decision to its facts, distinguishing it from almost indistinguishable situations, declining to overrule it in apologetic tones that seem to admit that consistency would compel such an overruling — decades of cases so treating the older decision would seem to make it a weak reed upon which to rely."
Note, Prospective Overruling and Retroactive Application in the FederalCourts, 71 Yale L.J. 907, 947 (1962). Parden fits this mold exactly. In some instances, courts have denied retroactive application of a new rule when the ruling comes as a surprise. See, e.g., Wal-Mart Stores, Inc. v.City of Mobile, 696 So.2d 290, 291 (Ala. 1996). However, the demise ofParden was clearly forecast. To the extent our holding in this case conflicts with Terminal Railway of the Alabama State Docks Department v.Mason, 620 So.2d 637 (Ala. 1993), and Coleman v. Alabama State DocksTerminal Railway, 596 So.2d 912 (Ala. 1992), those cases are overruled.
REVERSED AND REMANDED.
Moore, C.J., and Houston, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
See, J., concurs in the result.
[1] Section 33-1-2, Ala. Code 1975, was amended, effective August 1, 2000, to change the name of the "Alabama State Docks Department" to the "Alabama State Port Authority."