Wallace M. Larkins sued his employer, the State Department of Mental Health and Mental Retardation ("the Department"), in the United States District Court for the Middle District of Alabama, alleging that the Department had violated 38 U.S.C. § 4300 et seq., the Uniform Services Employment and Reemployment Rights Act (the "USERRA"). That Act deals with the right of a person in the military service to be reemployed at his or her civilian job upon the completion of military service. The district court dismissed Larkins's complaint for want of jurisdiction.See 38 U.S.C. § 4323 (b).[1]
Larkins refiled his claims against the Department in the Montgomery Circuit Court. He alleged that the Department, in violation of38 U.S.C. § 4311, had retaliated against him because he had made complaints of discriminatory treatment, and he alleged that the Department, in violation of 38 U.S.C. § 4313, had failed to accommodate him after he was injured during military service. Larkins and the Department each moved for a summary judgment. The trial court entered a summary judgment in favor of the Department, relying on Monroe v.Standard Oil Co., 452 U.S. 549 (1981). Larkins appealed. We conclude that, under Article I, § 14, of the Alabama Constitution of 1901, the Department is immune from suit in a State court based on Larkins's claims. Thus, we affirm the summary judgment in favor of the Department.
Larkins had been employed as a mental-health police officer at the J.S. Tarwater Developmental Center ("Tarwater"), which *Page 360 
is owned and operated by the Department.[2] In 1994, Larkins, as a member of the United States Air Force Reserve, injured his foot while attending a two-week training camp at Sheppard Air Force Base in Texas. The injury was classified by the Air Force as occurring "in the line of duty." Larkins later, upon release from his military duty, returned to his position at Tarwater.
As a mental-health police officer, Larkins was required to conduct regular foot patrols of the grounds, to pursue fleeing patients, and to carry out many other ambulatory responsibilities. Upon his return to Tarwater, Larkins continued to have problems with his injured foot. He asked to use his accumulated sick leave and annual leave, to begin on July 25, 1994. The Department granted Larkins's request. Larkins later obtained permission to take an additional leave of absence without pay, from September 17, 1994, through March 24, 1995, because of the injury to his foot. On October 17, 1995, Larkins again requested a leave of absence without pay. The Department granted his request, and Larkins did not return until March 30, 1996. During these leave periods, Larkins requested that the Department accommodate him by giving him a light-duty assignment, but the Department repeatedly denied his requests.
Larkins argues that the Department was obligated to accommodate him because of his injury, either by assigning him to a light-duty position or by transferring him to a position that did not require physical exertion beyond his temporary medical limitations. Also, Larkins claims that the Department retaliated against him by lowering his evaluation score, an action he says ultimately caused him to lose a two-step pay increase. Specifically, Larkins argues that the Department violated his rights under 38 U.S.C. § 4311 and 4313(a)(3).
The Department argues, however, that Monroe v. Standard Oil Co., supra, the case the trial court relied on in entering the summary judgment in favor of the Department, states that the legislative history of the USERRA strongly suggests Congress did not intend for employers to provide special benefits — benefits not generally made available to other employees — to employees who are also in the military reserve. In addition, the Department claims that the legislative history of the USERRA makes it "abundantly clear that [the Act's] purpose . . . was to protect employee reservists from discharge, denial of promotional opportunities, or other comparable adverse treatment" because of military obligations, and that it does not suggest that the USERRA provides preferential treatment. Finally, the Department argues that under theEleventh Amendment of the United States Constitution it is immune from "suit in federal court brought by private citizens," citing Velasquez v.Frapwell, 165 F.3d 593 (7th Cir. 1999), and Seminole Tribe v. Florida,517 U.S. 44 (1996).
This case presents an attempt by a private citizen to sue the State of Alabama in a state court based upon rights created by an act of Congress. The Department has belatedly[3] and awkwardly *Page 361 
asserted its immunity from suit, by alleging in its brief before this Court that, pursuant to the Eleventh Amendment, it is immune from "suitin federal court brought by private citizens." (Emphasis added.) Of course, if this action was pending in a federal court, it would not be within our jurisdiction.
Eleventh Amendment jurisprudence, however, as it bears upon Congress's authority to subject a State to suit, is not wholly irrelevant to our analysis. In Alden v. Maine, 527 U.S. 706 (1999), the United States Supreme Court, in an opinion by Justice Kennedy, discussed the immunity of a State from suit in its own courts based upon acts of Congress:
 "The Eleventh Amendment makes explicit reference to the States' immunity from suits `commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.' U.S. Const., Amdt. 11. We have, as a result, sometimes referred to the States' immunity from suit as `Eleventh Amendment immunity.' The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment. Rather, as the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments.
 "Although the Constitution establishes a National Government with broad, often plenary authority over matters within its recognized competence, the founding document `specifically recognizes the States as sovereign entities.' Seminole Tribe of Fla. v. Florida, [517 U.S. 44 at 71 n. 15 (1996)]; accord, Blatchford v. Native Village of Noatak, 501 U.S. 775, 779 (1991) (`[T]he States entered the federal system with their sovereignty intact'). Various textual provisions of the Constitution assume the States' continued existence and active participation in the fundamental processes of governance. See Printz v. United States, 521 U.S. 898, 919 (1997) (citing Art. III, § 2; Art. IV, §§ 2-4; Art. V). The limited and enumerated powers granted to the Legislative, Executive, and Judicial Branches of the National Government, moreover, underscore the vital role reserved to the States by the constitutional design, see, e.g., Art. I, § 8; Art. II, §§ 2-3; Art. III, § 2. Any doubt regarding the constitutional role of the States as sovereign entities is removed by the Tenth Amendment, which, like the other provisions of the Bill of Rights, was enacted to allay lingering concerns about the extent of the national power. The Amendment confirms the promise implicit in the original document: `The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.' U.S. Const., Amdt. 10; see also Printz, supra, at 919 [177 S.Ct. 2365]; New *Page 362 York v. United States, 505 U.S. 144, 156-159, 177 [112 S.Ct. 2408, 120 L.Ed.2d 120] (1992)."
527 U.S. at 712-14, 119 S.Ct. 2240 (emphasis added).
The Court in Alden rejected the contention that powers conferred upon Congress by Article I, including the authority for carrying into execution such powers by making all laws "necessary and proper" (Art. I, § 8, last paragraph), could be construed as overriding the sovereignty of a State. Justice Kennedy stated:
 "The Constitution, by delegating to Congress the power to establish the supreme law of the land when acting within its enumerated powers, does not foreclose a State from asserting immunity to claims arising under federal law merely because that law derives not from the State itself but from the national power. A contrary view could not be reconciled with Hans [v. Louisiana, 134 U.S. 1 (1890)], which sustained Louisiana's immunity in a private suit arising under the Constitution itself; with Employees of Dept. of Public Health and Welfare of Mo. v. Department of Public Health and Welfare of Mo., 411 U.S. 279, 283
(1973), which recognized that the FLSA was binding upon Missouri but nevertheless upheld the State's immunity to a private suit to recover under that Act; or with numerous other decisions to the same effect. We reject any contention that substantive federal law by its own force necessarily overrides the sovereign immunity of the States. When a State asserts its immunity to suit, the question is not the primacy of federal law but the implementation of the law in a manner consistent with the constitutional sovereignty of the States.
 "Nor can we conclude that the specific Article I powers delegated to Congress necessarily include, by virtue of the Necessary and Proper Clause or otherwise, the incidental authority to subject the States to private suits as a means of achieving objectives otherwise within the scope of the enumerated powers. Although some of our decisions had endorsed this contention, see Parden v. Terminal R. Co. of Ala. Docks Dept., 377 U.S. 184, 190-194
(1964); Pennsylvania v. Union Gas Co., 491 U.S. 1, 13-23 (1989) (plurality opinion), they have since been overruled, see Seminole Tribe, supra, at 63-67, 72; College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., ante, [527 U.S. 666,] at 680 (1999). As we have recognized in an analogous context:
 "`When a "La[w] . . . for carrying into Execution" the Commerce Clause violates the principle of state sovereignty reflected in the various constitutional provisions . . . it is not a "La[w] . . . proper for carrying into Execution the Commerce Clause," and is thus, in the words of The Federalist, "merely [an] ac[t] of usurpation" which "deserve[s] to be treated as such."' Printz, supra, at 923-924, (quoting The Federalist No. 33, at 204) (ellipses and alterations in Printz)."
527 U.S. at 732-33, 119 S.Ct. 2240.
The remedy created by Congress to protect members of the Armed Forces in their employment is clearly grounded in Art. I, § 8, dealing with the power of Congress to provide for armies and the navy, and to make rules for the Government in regulation of the land and naval forces. However, Alden forecloses, on constitutional *Page 363 
grounds, resort to Article I as the basis for subjecting the State of Alabama to suit in a state court on a remedy based upon Congress's assertion of its powers with respect to military preparedness. If we were dealing with a remedy created by Congress pursuant to theFourteenth Amendment, an entirely different result would obtain because theFourteenth Amendment overrides the scheme of sovereignty of states as it existed at the time of the formation of the Union. See Board of Trusteesof the Univ. of Alabama v. Garrett, 531 U.S. 356, 363-74, 121 S.Ct 955,962-67 (2001); Kimel v. Florida Bd. of Regents, 528 U.S. 62, 80-82,120 S.Ct. 631, 145 L/Ed/2d 522 (2000).
The statutory basis for suit against the State of Alabama pursuant to the USERRA arguably incorporates the constitutional doctrine expressed inAlden. The USERRA confers jurisdiction over an action by a person against a state as an employer, upon any "State court of competent jurisdictionin accordance with the laws of the State." 38 U.S.C. § 4323(b)(2) (emphasis added). To the extent that Congress's deference to state law includes a state's laws dealing with its immunity from suit, the USERRA does not violate the immunity of the State of Alabama under the United States Constitution.
The result in this case, then, turns on a question of Alabama law dealing with the extent of this State's immunity from suit and the method by which it is invoked. The State is immune from suit, and its immunity cannot be waived by the Legislature or by any other State authority.Druid City Hosp. Bd. v. Epperson, 378 So.2d 696 (Ala. 1979). Recently, this Court restated long-settled principles concerning the immunity of the State of Alabama from suit and the precedent, firmly supported by the doctrine of stare decisis, which holds that an action contrary to the State's immunity is an action over which the courts of this State lack subject-matter jurisdiction. In Alabama State Docks Terminal Ry. v.Lyles, 797 So.2d 432 (Ala. 2001), this Court held:
 "The long-standing legal principle of state sovereign immunity is written into Alabama's Constitution. `Article I, § 14, Alabama Constitution of 1901, provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Under this provision, the State and its agencies have absolute immunity from suit in any court.' Ex parte Franklin County Dep't of Human Res., 674 So.2d 1277, 1279 (Ala. 1996) (citing Barnes v. Dale, 530 So.2d 770
(Ala. 1988)). Neither the State nor the Alabama State Port Authority has the power to waive that immunity:
 "`It is familiar law in this state that § 14 "wholly withdraws from the Legislature, or any other state authority, the power to give consent to a suit against the state." Dunn Construction Co. v. State Board of Adjustment, 234 Ala. 372, 376, 175 So. 383, 386 (1937). This Court has recognized the "`almost invincible' `wall' of the state's immunity, as established `by the people through their Constitution.'" Jones v. Alabama State Docks, 443 So.2d [902] at 905 [(Ala. 1983)], quoting Hutchinson v. Board of Trustees of University of Alabama, 288 Ala. 20, 24, 256 So.2d 281, 284 (1971). Therefore, it is clear that neither the [L]egislature nor the State Docks had the power to waive, either expressly or impliedly, the state's immunity under § 14 and thereby consent to a damages action against the state.'
 "Alabama State Docks v. Saxon, 631 So.2d 943, 946
(Ala. 1994). (See Ex parte Cranman, 792 So.2d 392
(Ala. 2000), for *Page 364 
history and background regarding the development of state-agent immunity.) Article I, § 14, of the Alabama Constitution of 1901 thus removes subject-matter jurisdiction from the courts when an action is determined to be one against the State.
 "`We have held that the circuit court is without jurisdiction to entertain a suit against the State because of Sec. 14 of the Constitution. J.R. Raible Co. v. State Tax Commission, 239 Ala. 41, 194 So. 560
[(1939)]. And this court has said that it will take notice of the question of jurisdiction at any time or even ex mero motu. Horn v. Dunn Brothers, Inc., 262 Ala. 404, 79 So.2d 11 [(1955)]; Scott v. Alabama State Bridge Corporation, 233 Ala. 12, 169 So. 273
[(1936)]. Therefore, it appears that a trial court or an appellate court should, at any stage of the proceedings, dismiss a suit when it becomes convinced that it is a suit against the State and contrary to Sec. 14 of the Constitution.'
 "Aland v. Graham, 287 Ala. 226, 229, 250 So.2d 677, 678 (1971). This constitutionally guaranteed principle of sovereign immunity, acting as a jurisdictional bar, precludes a court from exercising subject-matter jurisdiction. Without jurisdiction, a court has no power to act and must dismiss the action. `"The question of jurisdiction is always fundamental, and if there is an absence of jurisdiction over either the person, or the subject matter, a court has no power to act, and jurisdiction over the subject matter cannot be created by waiver or consent."' Mobile Gulf R.R. v. Crocker, 455 So.2d 829, 831 (Ala. 1984) (quoting Norton v. Liddell, 280 Ala. 353, 356, 194 So.2d 514, 517 (1967)). If an Alabama court has jurisdiction to hear Lyles's action, it must come through some abrogation of the State's immunity."
797 So.2d at 434-35.
While the record before us does not indicate that the Department asserted its immunity in the trial court, and while the Department does not express that defense here with precision, we cannot hold the State to have waived its immunity — such a holding would conflict with our prior cases treating the State's immunity as jurisdictional.
Because the Department is immune from Larkins's action asserting USERRA claims, we need not reach the merits of those claims. We affirm the judgment in favor of the Department.
AFFIRMED.
Moore, C.J., and Houston, See, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.
[1] During the pendency of Larkins's complaint in the federal district court, Congress amended the USERRA to provide proper jurisdiction for an action against a State as an employer. The amendment, known as the Veterans Programs Enhancement Act of 1998, P.L. 105-368, applied to cases pending at the time of its passage. The amendment, codified at38 U.S.C. § 4323(b), reads, in pertinent part:
"(b) Jurisdiction.
 "(1) In the case of an action against a State (as an employer) or a private employer commenced by the United States, the district courts of the United States shall have jurisdiction over the action.
 "(2) In the case of an action against a State (as an employer) by a person, the action may be brought in a State court of competent jurisdiction in accordance with the laws of the State."
(Emphasis added.) See also Velasquez v. Frapwell, 165 F.3d 593 (7th Cir. 1999).
[2] Larkins is presently employed as a mental-health police officer at Greil Hospital, also owned and operated by the Department. He states that he is now capable of performing all essential functions of his job, without accommodation.
[3] The record before us does not include the Department's brief in support of its motion for summary judgment, and it does not indicate that the Department asserted this defense before the trial court. It may be that the Department did, in fact, assert this defense; however, this Court cannot assume error or presume the existence of facts as to which the record is silent. Alfa Mut. Gen'l Ins. Co. v. Oglesby, 711 So.2d 938,942 (Ala. 1997).