937 So.2d 1018 (2006)
Ex parte ALABAMA DEPARTMENT OF MENTAL HEALTH AND MENTAL RETARDATION et al.
(In re Terri Sanders, as guardian of Charles "Marty" Green
v.
Alabama Department of Mental Health and Mental Retardation et al.).
1041172.
Supreme Court of Alabama.
March 10, 2006.
*1020 Troy King, atty. gen., and Courtney W. Tarver, deputy atty. gen. and gen. counsel, Alabama Department of Mental Health & Mental Retardation, for petitioners.
Kenneth J. Mendelsohn, Thomas E. James, and Ellenann B. Yelverton of Jemison, Mendelsohn & James, P.C., Montgomery, for respondent.
SEE, Justice.
The Alabama Department of Mental Health and Mental Retardation ("DMHMR"); its acting commissioner, John H. Houston; two former directors of the J.S. Tarwater Development Center; and five former employees of the J.S. Tarwater Development Center petition this Court for a writ of mandamus directing the trial court to enter a summary judgment in their favor on the grounds of sovereign immunity and State-agent immunity. We grant the petition in part and deny it in part.

Facts
Charles "Marty" Green was, at the time of the incidents giving rise to this action, a mentally retarded resident of the J.S. Tarwater Development Center ("the Tarwater Center").[1] On May 11, 2000, Lonnie Floyd, an employee of the Tarwater Center, assaulted Green. Then, on January 16, 2002, Ernest Holmes, another employee of the Tarwater Center, assaulted Green. It is undisputed that, at the time of each assault, Green was under the care, custody, and control of the Tarwater Center and DMHMR.
Terri Sanders, as Green's guardian, sued Holmes and Floyd in their individual capacities.[2] Sanders also sued DMHMR and its then commissioner Kathy Sawyer, *1021 in her individual and official capacities. The original action also named as defendants Dr. Ellen Gillespie, the director of the Tarwater Center at the time the assaults took place, and her successor, Judith Johnston, in their individual and official capacities.[3] Sanders later added as defendants, in their individual and official capacities, Tommy Judd, Joan Owens, and Doretta Strength, who were involved in hiring Floyd and/or Holmes. Sanders also added as defendants, in both their individual and official capacities, Bridgette Johnson and Teresia Marshall, employees of the Tarwater Center who witnessed the assault by Holmes. Sanders requested monetary damages from DMHMR, and she requested monetary damages from all the other defendants in their individual and official capacities.[4]
In October 2003, DMHMR, former commissioner Sawyer, Gillespie, and Johnston petitioned this Court for a writ of mandamus directing the trial court to enter a summary judgment in their favor on the ground that DMHMR is entitled to sovereign immunity and that former commissioner Sawyer, Gillespie, and Johnston are each entitled to sovereign and State-agent immunity. They also requested that we direct the trial court to vacate a scheduling order because, they said, Sanders had allowed all the discovery deadlines to pass without taking any action. By order, this Court denied the petition based on procedural considerations no longer present. Ex parte Alabama Dep't of Mental Health & Mental Retardation (No. 1030036, October 30, 2003).[5]
The trial court subsequently entered a summary judgment in favor of former commissioner Sawyer, Gillespie, and Johnston in their individual capacities, leaving Sanders's claims against (1) DMHMR; (2) former commissioner Sawyer, Gillespie, Johnston, Judd, Owens, Strength, Johnson, and Marshall in their official capacities; and (3) Judd, Owens, Strength, Johnson, and Marshall in their individual capacities.
Asserting sovereign immunity, DMHMR moved for a summary judgment on Sanders's claims against it, and former commissioner Sawyer, Gillespie, and Johnston moved for a summary judgment on Sanders's remaining claims against them in their official capacities. Judd, Owens, Strength, Johnson, and Marshall moved for a summary judgment on Sanders's claims against them in their official and individual capacities on the grounds of sovereign immunity and State-agent immunity. The trial court held a hearing and denied the summary-judgment motion.
DMHMR, acting DMHMR commissioner John H. Houston,[6] Gillespie, Johnston, *1022 Judd, Owens, Strength, Johnson, and Marshall (collectively "the DMHMR defendants") petition this Court for a writ of mandamus directing the trial court to enter a summary judgment in their favor on Sanders's claims seeking monetary relief against them in their official capacities based on sovereign immunity. Judd, Owens, Strength, Johnson, and Marshall also assert that they are entitled to a writ of mandamus directing the trial court to enter a summary judgment in their favor on Sanders's claims seeking monetary relief against them in their individual capacities based on State-agent immunity.[7]

Standard of Review
Although the denial of a motion for a summary judgment is generally not reviewable, "`the denial of a motion for summary judgment grounded on a claim of immunity is reviewable by a petition for writ of mandamus.'" Ex parte City of Tuskegee, 932 So.2d 895, 900 (Ala.2005) (quoting Ex parte Rizk, 791 So.2d 911, 912 (Ala.2000)). "`"`Mandamus is a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.'"'" Ex parte Vance, 900 So.2d 394, 397 (Ala.2004) (quoting Ex parte Sears, Roebuck and Co., 895 So.2d 265 (Ala.2004), quoting other cases). The standard of review applicable to a mandamus petition challenging the denial of a summary-judgment motion grounded on a claim of immunity is as follows:
"If there is a genuine issue as to any material fact on the question whether the movant is entitled to immunity, then the moving party is not entitled to a summary judgment. Rule 56, Ala. R. Civ. P. In determining whether there is a material fact on the question whether the movant is entitled to immunity, courts, both trial and appellate, must view the record in the light most favorable to the nonmoving party, accord the nonmoving party all reasonable favorable inferences from the evidence, and resolve all reasonable doubts against the moving party, considering only the evidence before the trial court at the time it denied the motion for a summary judgment."
Ex parte Wood, 852 So.2d 705, 708 (Ala. 2002) (citing Ex parte Rizk, 791 So.2d at 912).

Analysis

I. Sovereign Immunity
DMHMR contends that it is entitled to a summary judgment on the ground of sovereign immunity as to Sanders's claims against it seeking monetary damages. Commissioner Houston, Gillespie, Johnston, Judd, Owens, Strength, Johnson, and Marshall also contend that they are entitled to a summary judgment on the ground of sovereign immunity on Sanders's claims for monetary damages against them in their official capacities. We agree.
Sovereign immunity is a jurisdictional bar that deprives a court of subject-matter jurisdiction. Ex parte Alabama Dep't of Mental Health & Mental Retardation, *1023 837 So.2d 808, 810-11 (Ala.2002). The principle of sovereign immunity, set forth in Article I, § 14, Alabama Constitution of 1901, is a wall that is "nearly impregnable." Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002). The implications of sovereign immunity are "`not only that the state itself may not be sued, but that this cannot be indirectly accomplished by suing its officers or agents in their official capacity, when a result favorable to plaintiff would be directly to affect the financial status of the state treasury.'" Patterson, 835 So.2d at 142 (quoting State Docks Comm'n v. Barnes, 225 Ala. 403, 405, 143 So. 581, 582 (1932)).
Sovereign immunity bars claims against State agencies on the rationale that a damages award against a State agency would result in a monetary loss to the State treasury. Ex parte Davis, 930 So.2d 497, 500 (Ala.2005). For this reason, DMHMR, as a State agency, is entitled to absolute immunity against Sanders's claims for monetary damages. Ex parte Alabama Dep't of Mental Health, 837 So.2d at 810-11 (holding that DMHMR was entitled to absolute sovereign immunity and that former commissioner Sawyer was entitled to sovereign immunity on claims for monetary damages) (citing Larkins v. Department of Mental Health & Mental Retardation, 806 So.2d 358 (Ala. 2001), and Ex parte Franklin County Dep't of Human Res., 674 So.2d 1277 (Ala. 1996)).
Sanders's claims for monetary damages against Commissioner Houston, Gillespie, Johnston, Judd, Owens, Strength, Johnson, and Marshall in their official capacities are also barred by the doctrine of sovereign immunity because "[a] complaint seeking money damages against a State employee in his or her official capacity is considered a complaint against the State, and such a complaint is barred by Art. I, § 14, Alabama Constitution of 1901." Ex parte Butts, 775 So.2d 173, 177 (Ala.2000) (citing Ex parte Alabama Dep't of Forensic Sciences, 709 So.2d 455, 457 (Ala.1997)); see also Ex parte Alabama Dep't of Mental Health, 837 So.2d at 810-11 (holding that former commissioner Sawyer was entitled to sovereign immunity on claims for monetary damages) (citing Larkins, supra, and Ex parte Franklin County Dep't of Human Res., supra).
Thus, DMHMR and Commissioner Houston, Gillespie, Johnston, Judd, Owens, Strength, Johnson, and Marshall have demonstrated a clear legal right to a summary judgment in their favor on the ground of sovereign immunity on the claims brought against DMHMR and against the individual defendants in their official capacities. We grant their petition and direct the trial court to enter a summary judgment in their favor on Sanders's claims for monetary damages against DMHMR and the individual defendants in their official capacities on the ground of sovereign immunity.

II. State-agent Immunity
Sanders also sought monetary damages from Judd, Owens, Strength, Johnson, and Marshall in their individual capacities. These five defendants ask this Court to issue the writ of mandamus directing the trial court to enter a summary judgment in their favor on those claims based on State-agent immunity.
In analyzing cases in which a defendant presents the trial court with a State-agent-immunity claim on a summary-judgment motion, this Court applies a burden-shifting analysis based on the evidence presented to the trial court. Ex parte Wood, 852 So.2d at 709 (citing Ryan v. Hayes, 831 So.2d 21, 28 (Ala.2002)). In order to establish State-agent immunity, *1024 the party seeking to assert the defense must present evidence indicating that the claims asserted against him or her arise from the performance of a discretionary act. Ex parte Wood, 852 So.2d at 709 (quoting Ex parte Alabama Dep't of Transp., 764 So.2d 1263, 1268-69 (Ala. 2000)). We restated the standard for determining whether an act is discretionary for purposes of determining the applicability of State-agent immunity in Ex parte Cranman, 792 So.2d 392 (Ala.2000).[8] If the defendant establishes that the conduct made the basis of the claim against him or her falls within a category of conduct giving rise to State-agent immunity, then the burden shifts to the plaintiff to show that the defendant acted in a manner that precludes the application of State-agent immunity. Ex parte Wood, 852 So.2d at 709 (quoting Ryan v. Hayes, 831 So.2d at 28); see also Cranman, 792 So.2d at 405 ("a State agent shall not be immune from civil liability in his or her personal capacity ... when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law").
In order for Judd, Owens, Strength, Johnson, and Marshall to have carried their burden on the summary-judgment motion, each of them must have demonstrated that Sanders's claims arose from the performance of a discretionary function giving rise to State-agent immunity. If we conclude that a defendant carried his or her burden to show that Sanders's claims arose from the performance of a discretionary function that gives rise to State-agent immunity, then the burden shifted to Sanders to show that the defendant's actions are not protected by State-agent immunity. See Ex parte Wood, 852 So.2d at 709 (quoting Ryan v. Hayes, 831 So.2d at 28); see also Ex parte Spivey, 846 So.2d 322, 333 (Ala.2002).

A. Owens and Judd's Hiring of Floyd
Owens and Judd argue that they are entitled to State-agent immunity because, they argue, in hiring Floyd they were performing a discretionary function. This Court stated in Cranman that a State agent is entitled to immunity when the conduct made the basis of the claim against the agent is based upon the agent's "exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as ... hiring, firing, transferring, assigning, or supervising personnel." Cranman, 792 So.2d at 405.
Floyd was hired in May 1998 to work at the Tarwater Center. At that time, Judd was the personnel director of the Tarwater Center and Owens was a personnel specialist. Owens's duties included interviewing potential mental-health workers, and she interviewed Floyd for an opening at the Tarwater Center for a mental-health worker.[9] The DMHMR defendants attached to their summary-judgment motion Owens's deposition testimony in which she states that she reviewed Floyd's application, interviewed Floyd, and requested a background check and that nothing in the information she gathered indicated that Floyd was unsuitable for employment at the Tarwater Center. Therefore, Owens recommended to Judd that Floyd be employed as a mental-health worker at the Tarwater Center. The DMHMR defendants *1025 do not present deposition testimony by Judd. However, Owens indicates in her deposition testimony that Judd reviewed Floyd's application materials and Owens's recommendation. Floyd was subsequently hired to work at the Tarwater Center.
This Court has declined to hold that a defendant was entitled to State-agent immunity when he "[had] not presented to the trial court ... evidence dealing specifically with the activities ... that [were] made the basis of [the] action." Ex parte Wood, 852 So.2d at 711. The evidence presented to the trial court on the motion for a summary judgment deals specifically with Floyd's hiring  the action that is made the basis of Sanders's action. The evidence showed that Judd and Owens reviewed Floyd's application, interviewed Floyd, and requested a background check before exercising their judgment in hiring him. Judd and Owens carried their burden of showing that their decision to hire Floyd falls within a category of conduct for which immunity is available. See Cranman, 792 So.2d at 405 (State-agent immunity is available "when the conduct made the basis of the claim against the agent is based upon the agent's ... exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as ... hiring, firing, transferring, assigning, or supervising personnel").
Once Owens and Judd satisfied their burden, the burden then shifted to Sanders to demonstrate that Owens and Judd acted in a manner that precludes State-agent immunity, that is, that they acted "`fraudulently, willfully, maliciously, or in bad faith.'" Ex parte Wood, 852 So.2d at 709 (quoting Ryan v. Hayes, 831 So.2d at 28). Sanders argues in her answer to the petition for the writ of mandamus that Owens and Judd are not entitled to State-agent immunity because, she says, Floyd had been convicted of domestic violence and DMHMR policy prohibits DMHMR's hiring anyone with a history of violent criminal offenses.[10] In opposition to the DMHMR defendants' summary-judgment motion, Sanders presented Johnston's and Owens's deposition testimony indicating that, if a job applicant had been convicted of domestic violence, he or she cannot be hired as a mental-health worker.[11] However, Sanders did not, in opposition to the summary-judgment motion, present to the trial court evidence supporting her allegation that Floyd had been convicted of domestic violence.[12] Nor did *1026 Sanders present the trial court with any evidence indicating that either Owens or Judd was aware of the alleged conviction. There was no evidence before the trial court indicating that Floyd had been, in fact, convicted of domestic violence,[13] that Owens or Judd was aware of any such conviction, or that Owens and Judd acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law," Cranman, 792 So.2d at 405, in hiring Floyd. We cannot conclude that Sanders carried her burden to show that Judd and Owens are not entitled to State-agent immunity.
Judd and Owens carried their burden on their summary-judgment motion to show that they are entitled to State-agent immunity as to Sanders's claims regarding the hiring of Floyd, and Sanders did not meet her burden to show otherwise.

B. Owens and Strength's Hiring of Holmes
Owens and Strength contend that they are entitled to State-agent immunity because in hiring Holmes they were "exercising... judgment in the administration of a department or agency of government, including, but not limited to ... hiring, firing, transferring, assigning, or supervising personnel." Cranman, 792 So.2d at 405.
Holmes was hired to work at the Tarwater Center in 2001. When Holmes was hired, Owens had replaced Judd as the personnel director for the Tarwater Center and Strength was a personnel assistant. Strength stated in her deposition, attached to the DMHMR defendants' summary-judgment motion, that she interviewed Holmes for the position of mental-health worker. She testified that she did not notice anything peculiar about Holmes during their interview and that he did not mention anything about his religious beliefs or attitude toward mental retardation and that she never heard of his beliefs and attitude during his employment at the Tarwater Center. Deposition testimony presented to the trial court in support of the DMHMR defendants' summary-judgment motion indicates that Owens and Strength hired Holmes as a mental-health worker based on a review of his application, a background check, and an interview. Based on the evidence presented, Owens and Strength carried their burden of showing that they are entitled to State-agent immunity in the hiring of Holmes because they were exercising their discretion in the hiring of personnel for DMHMR. See Cranman, 792 So.2d at 405.
Thus, the burden then shifted to Sanders to show that Owens and Strength were not entitled to State-agent immunity because in hiring Homes they had acted "willfully, maliciously, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law," Cranman, *1027 792 So.2d at 405. See Ex parte Wood, 852 So.2d at 709. Sanders contends in her answer to the DMHMR defendants' petition that Owens and Strength are not entitled to State-agent immunity in regard to Holmes's hiring because, she says, Holmes was unqualified to work as a mental-health worker based on his alleged belief that mental retardation is the result of demonic possession and that physical violence is the best form of treatment for such a condition. Sanders argues that a proper screening and interview process would have alerted Owens and Strength to Holmes's beliefs and that, because they failed to discern those beliefs during the hiring process, they acted outside their discretionary authority in hiring Holmes. However, Sanders did not, in her response to the DMHMR defendants' summary-judgment motion, provide the trial court with any evidence indicating where she had learned of Holmes's alleged beliefs regarding mental retardation or that Holmes actually holds such beliefs or that hiring someone with such beliefs would be an act not protected by State-agent immunity.[14] We cannot conclude that Sanders presented evidence to the trial court indicating that Owens and Strength's hiring of Holmes was willful, malicious, fraudulent, in bad faith, or beyond their authority. See Cranman, 792 So.2d at 405. Therefore, Sanders did not carry her burden of showing that Owens and Strength are not entitled to State-agent immunity.[15]
Owens and Strength carried their burden of showing that their actions fall within a category of conduct protected by State-agent immunity under Cranman, and Sanders failed to present facts showing that Owens and Strength's hiring of Holmes constitutes conduct that falls outside the protection of State-agent immunity. Therefore, applying the burden-shifting analysis articulated in Ex parte Wood, 852 So.2d at 709, we hold that Owens and Strength have established a clear legal right to a summary judgment based on State-agent immunity on Sanders's claims against them relating to the hiring of Holmes.

*1028 C. Johnson and Marshall
Johnson and Marshall contend that they are entitled to State-agent immunity for Sanders's claims seeking monetary damages against them in their individual capacities. Sanders alleges that Johnson and Marshall violated DMHMR policy because they were present when Holmes assaulted Green, but they failed to intervene on Green's behalf.
Johnson and Marshall assert that they are entitled to State-agent immunity because, they say, their actions fall within a category of immune conduct. Johnson and Marshall argue that they are entitled to State-agent immunity because in not intervening in the incident involving Holmes and Green they were merely discharging the duties imposed upon them. Johnson and Marshall state both in the petition for the writ of mandamus and in the summary-judgment motion that in not intervening they were
"`discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"`... exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.'"
Ex parte Butts, 775 So.2d at 178 (quoting Cranman, 792 So.2d at 405). In neither document do Johnson and Marshall support this quotation or their conclusory statements with specific facts regarding their failure to become involved in Holmes's assault of Green nor do they demonstrate that in refusing to interfere they were adhering to a specific rule or regulation applicable to the incident involving Holmes and Green.
Johnson and Marshall contend in the summary-judgment motion and in the petition for the writ of mandamus that their conduct was a method of resolving "competing caretaker interests." In support of this contention, they present deposition testimony by former commissioner Sawyer that "policies and procedures ... speak to the individual nature or the individuality of the situation." However, Sawyer's testimony does not explain what those competing caretaker interests were and why Johnson and Marshall resolved those competing interests in favor of noninterference.
Johnson and Marshall also attach deposition testimony from former Tarwater director Johnston stating that although DMHMR policy dictates that Johnson and Marshall should have intervened on Green's behalf, "there may have been extenuating circumstances at that moment in time that prevented their following to the letter of the law the policy on physical assistance." Johnston does not point to any rule or regulation that allows Johnson and Marshall to exercise such discretion. Nor does Johnston's deposition testimony explain what extenuating circumstances would justify Johnson and Marshall's nonintervention, and Johnson and Marshall do not provide details pertaining to extenuating circumstances. We held in Ex parte Wood that, when a defendant asserting State-agent immunity "states in conclusory terms that his duties required him to exercise his judgment and discretion[,] ... yet fail[s] to state his involvement or his adherence to a rule or regulation governing the exercise of his duties, in the actions underlying the claims asserted against him," there was insufficient evidence to support a conclusion that the defendant was entitled to State-agent immunity. 852 So.2d at 711-12. Similarly, in this case, Johnson and Marshall failed to carry their *1029 burden of establishing that their conduct in not intervening in Holmes's assault on Green fell within the ambit of State-agent immunity.
Johnson and Marshall do not show that their actions fall within the performance of a function that clearly entitles them to State-agent immunity. Therefore, they are not entitled to a writ of mandamus directing the trial court to enter a summary judgment in their favor on Sanders's claims for monetary damages against them in their individual capacities.

Conclusion
We grant the petition in part, deny it in part, and issue the writ. As to DMHMR and Commissioner Houston, Gillespie, Johnston, Judd, Owens, Strength, Johnson, and Marshall, in their official capacities, we grant the petition and direct the trial court to enter a summary judgment in their favor on Sanders's monetary claims against them on the ground of sovereign immunity. As to Judd, Owens, and Strength, in their individual capacities, we grant the petition and direct the trial court to enter a summary judgment in their favor on Sanders's claims for monetary damages against them on the ground of State-agent immunity. As to Marshall and Johnson's request that this Court direct the trial court to enter a summary judgment in their favor on Sanders's claims for monetary damages against them in their individual capacities, we deny the petition for the writ of mandamus.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
NABERS, C.J., and HARWOOD, STUART, and BOLIN, JJ., concur.
NOTES
[1] The Tarwater Center closed on January 15, 2004.
[2] Holmes was found guilty of criminal charges related to the assault and was sentenced to one year's imprisonment. In this civil action, the trial court severed the claims against Holmes, tried him in absentia, and awarded Sanders a default judgment against Holmes in the amount of $1,000,000 in compensatory and punitive damages. Sanders states in her answer to the mandamus petition that she is continuing to move forward with her case against Floyd.
[3] Gillespie resigned as the director of the Tarwater Center in January 2002. Johnston succeeded Gillespie and was the director of the Tarwater Center when it closed in 2004.
[4] Sanders also requested injunctive relief against DMHMR, Sawyer, and the Tarwater Center directors in their official capacities, but she later withdrew those claims.
[5] Our denial of the previous mandamus petition has no res judicata effect on this current petition. See Cutler v. Orkin Exterminating Co., 770 So.2d 67 69 (Ala.2000) ("[B]ecause of the extraordinary nature of a writ of mandamus, the denial of relief by mandamus does not have res judicata effect."); see also EB Invs., L.L.C. v. Atlantis Dev., Inc., 930 So.2d 502 (Ala.2005).
[6] Sawyer retired from her position as commissioner of DMHMR in February 2005. DMHMR's acting commissioner, John H. Houston, was automatically substituted as a party pursuant to Rule 25(d)(1), Ala. R. Civ. P. ("When a public officer is a party to an action in an official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution.").
[7] All the defendants also request that the writ of mandamus direct the trial court to enter a summary judgment on Sanders's claims for injunctive relief. However, as noted earlier, Sanders abandoned her claims for injunctive relief. See note 4.
[8] Although Cranman was a plurality decision, this Court in Ex parte Butts, 775 So.2d 173 (Ala.2000), adopted the test for determining State-agent immunity as restated in Cranman. Butts, 775 So.2d at 177-78 ("We today adopt this new test suggested in Cranman.").
[9] Owens worked as a personnel specialist at the Tarwater Center until 1999. She is currently a personnel specialist in DMHMR's central office.
[10] In deposition testimony attached to the DMHMR defendants' summary-judgment motion, Owens stated that, to her knowledge, neither she nor Judd was ever informed that Floyd had been convicted of domestic violence. Owens further testified in her deposition that Floyd did not state in his interview that he had pleaded guilty to or had been convicted of domestic violence. Owens also testified at her deposition that, because the results of the background check usually are not received until after a recently hired employee begins work, if Floyd's background check had in fact contained a conviction for domestic violence, then Judd, as personnel director, would have dismissed Floyd for falsifying his application once he became aware of the conviction.
[11] Johnston was asked "[i]f there's a charge or conviction of a violent offense, would that automatically exclude an employee from being hired?" and she responded, "Absolutely." Owens was asked: "Would a conviction for domestic violence preclude somebody from being hired as a Mental Health Worker I?" Owens responded: "Yes." However, we also note that, in the pages from Owens's depositions that Sanders submitted to the trial court, Owens testified that there is no written DMHMR policy prohibiting hiring someone who has been convicted of a violent crime.
[12] Sanders asserts that the DMHMR defendants' refusal to produce the results of Floyd's background check is evidence that Floyd's background check contains information pertaining to a domestic-violence charge she alleges Floyd had been convicted of. However, as the DMHMR defendants point out in their reply brief, state law prohibits DMHMR from disclosing the contents of the background checks it conducts on potential employees. DMHMR defendants' reply to Sanders's answer, p. 5. See also § 22-50-91, Ala.Code 1975.
[13] We note that, at the hearing on the DMHMR defendants' summary-judgment motion, Sanders's counsel argued that Floyd had testified in deposition that he had been previously convicted of domestic violence. However, nothing before us indicates that Sanders offered any such testimony by Floyd to the trial court. Argument of counsel is not evidence. We also note that counsel for the DMHMR defendants argued that, although he could not produce Floyd's background check without a court order (which Sanders had not sought), there was no domestic-violence conviction on it.
[14] We note that, at the hearing on the DMHMR defendants' summary-judgment motion, Sanders's counsel stated that Holmes, in a deposition, was "open" about his beliefs. However, there is no indication that Sanders submitted Holmes's alleged testimony to the trial court in the form of evidence. Argument of counsel is not evidence.
[15] We note that in reviewing a denial of a summary-judgment motion grounded on a claim of immunity we must view the record in the light most favorable to Sanders as the nonmovant and accord Sanders all reasonable favorable inferences from the evidence. Ex parte Wood, 852 So.2d at 708. However, even if we were to proceed under the inference that the averments in Sanders's answer to the DMHMR defendants' petition were the same as the ones made to the trial court, her claim that Owens and Strength are not entitled to State-agent immunity is still unsubstantiated by the evidence. Sanders contends, without offering evidence, that Holmes did not believe mental retardation was a legitimate condition and that he was convinced that mental retardation was the result of "demon possession." Sanders alleges that Holmes believed physical violence is a better form of treatment for mentally retarded patients than the procedures promulgated by DMHMR. According to Sanders, Holmes was very open about his beliefs. However, even under the generous standard of review applicable to the denial of a summary-judgment motion, Sanders's conclusory assertion in her answer that "[i]t is obvious that Defendant Holmes was not properly interviewed and/or screened during the application process prior to his hiring because he would have gladly shared his thoughts on mental retardation and the treatment for the `demon possessed,'" Sanders's answer, p. 13, does not show that Owens and Strength acted willfully, maliciously, in bad faith, or beyond their authority in hiring Holmes. See Cranman, 792 So.2d at 405.